UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARYANN WINTERS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No. 15-01357 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

    Maryann Winters brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Title II Disability Insurance Benefits ("DIB"). Winters alleges that she is unable to engage in substantial gainful activity because she suffers from a number of physical and mental ailments, including, fibromyalgia, arthritis, and depression.

    For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is REMANDED as to one issue. *See* Section III.A.2 & 3, pp. 12–17, *infra*.

    **I.    BACKGROUND**

    Winters seeks to reverse or remand an ALJ's finding that she was not disabled from October 31, 2009 through the date of the ALJ's decision, October 22, 2013. Winters applied for DIB on April 8, 2011, for a period of disability beginning October 31, 2009. (Tr.[1] 182-188) Her claims were first denied on September 12, 2011, and again on reconsideration on May 17, 2012. (Tr. 113-

---

[1]     "Tr." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (Dkt. No. 5)

1

117; 121-123) On July 12, 2012, she filed a request for a hearing. (Tr. 124) On June 24, 2013, a hearing was held, at which Winters appeared and was represented by counsel. (Tr. 50-88) A vocational expert, Tanya Edghill, also appeared and testified at the hearing. (Tr. 81-84) On October 22, 2013, ALJ Barbara Dunn denied Winters's application for DIB. (Tr. 36-48) On December 24, 2014, the Appeals Council declined to review ALJ Dunn's decision, making the ALJ's decision the final act of the Commissioner. (Tr. 1–6) Winters now appeals.

## II. APPLICABLE STANDARDS AND BACKGROUND

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To do so, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR § 404.1520. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR § 404.1520(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* § 404.1520(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* § 404.1520(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* § 404.1520(e). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual issues, this Court will adhere to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this

3

> administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record substantial evidence which, on the whole, establishes that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 WL 2802266, at *13 (D.N.J. July 15, 2010). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 Fed. App'x 652, 658 (3d Cir. 2004)("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

### B. The ALJ's decision

ALJ Dunn concluded that from October 31, 2009, through October 22, 2013, Winters was not disabled. (Tr. 41-48) ALJ Dunn's determinations may be summarized as follows.

At step one, the ALJ determined that Winters had not engaged in substantial gainful activity since October 31, 2009, her alleged disability onset date. (Tr. 41)

At step two, the ALJ found that Winters had the following severe impairments: "tachycardia, Hepatitis B and C, degenerative joint disease, bipolar disorder, fibromyalgia, osteoarthritis, major depressive disorder, cervical and lumbar radiculopathy, anxiety, hypothyroidism, obesity, rheumatoid arthritis, dysthymic disorder and history of substance abuse." (*Id.*)

At step three, the ALJ determined that Winters's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Pt. 404 Subpt. P, App. 1 (the "Listings"). (*Id.*)

The ALJ then found that Winters has the residual functional capacity ("RFC") to

> perform light work ... [lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds] except that she cannot climb any ladders, ropes or scaffolds; she is limited to occasional climbing of ramps and stairs, balancing, kneeling, stooping, crouching, or crawling; she must avoid exposure to hazards (heights/dangerous machinery) or temperature extremes; she is limited to frequent bilateral handling and she is limited to simple routine work with no public contact and is limited to occasional co-worker or supervisory contact.

(Tr. 43)

At step four, the ALJ determined that, based on her RFC, Winters is unable to perform any past relevant work. (Tr. 47) The ALJ found that Winters's past relevant work, as categorized by the vocational expert, was in customer service, data entry, and clerical work. (*Id.*) The vocational expert

5

testified that those positions could not be filled by someone with Winters's RFC. (Tr. 80-81) The ALJ noted that Winters was 44 years old on her alleged disability onset date, which put her in the category of "younger individual age." (Tr. 47) The ALJ also found that Winters "has at least a high school education" and is able to communicate in English. (*Id.*) Transferability of job skills was "not material to the determination of disability" because Winters was not disabled under the Medical-Vocational Rules regardless of transferability of job skills. (*Id.*)

At step five, the ALJ considered Winters's "residual functional capacity, age, education, and work experience" and determined that Winters could perform jobs that exist in significant numbers in the national economy. (*Id.*) As noted above, such a finding at step five requires that benefits be denied.

### C. Winters's appeal

Winters argues that the ALJ erred in a few ways. First, she contends that the ALJ erred at step three when she determined her RFC. She asserts two errors in this respect: (1) the ALJ "failed to properly weigh the medical evidence" by discounting the opinions of treating physicians and giving more weight to the opinions of non-treating physicians (Pl. Br.[2] 17-25, Dkt. No. 8); and (2) the ALJ "failed to properly evaluate [Winters's] credibility" (*id.* 25-27). In addition, Winters argues that the ALJ erred at step five when she "relied on flawed vocational expert testimony" by posing a hypothetical question to the vocational expert that did not account for all of Winters's impairments. (Tr. 27-30)

I do not find any errors of law or procedure in the ALJ's decision; the ALJ provided reasons to support her decision and explained her reasoning. However, as discussed in Section III.A.2, pp. 12–13, *infra*, there is an inaccuracy in the ALJ's decision involving a fact on which the ALJ relies—

---

[2]  This brief and the Commissioner's opposition were submitted pursuant to L. Civ. R. 9.1.

namely, the frequency of references to "multiple bilateral [fibroymyalgia] trigger points" in the record. (Tr. 45) To assure that all of the relevant facts are accounted for in the ALJ's decision, I will remand for clarification on this issue, and related credibility issues, Section IIIA.3. I do not suggest that on remand the ALJ's decision must be different—it may be or it may not be. I remand only so that the ALJ may clarify that her decision is supported by a review of all the relevant evidence.

## III. ANALYSIS

### A. ALJ's step three analysis

Winters argues that the ALJ erred at step three, resulting in an inaccurate RFC determination. First, according to Winters, the ALJ gave too much weight to the opinions of non-treating physicians and failed to give enough weight to the opinions of Winters's treating physicians. Second, Winters argues that the ALJ erred in assessing Winters's credibility.

#### 1. ALJ's consideration of the medical evidence

Winters argues that the ALJ "failed to properly weigh the medical evidence" in her case. (Pl. Br. 17) She contends that the opinions of her physicians, Dr. Chung (a rheumatologist) and Dr. De Alwis (a psychiatrist), were entitled to controlling weight under 20 CFR § 404.1527(c)(2). In the alternative, she asserts that if their opinions were not entitled to controlling weight, they were at least entitled to deference. (*Id.* 22) She argues that the ALJ erred by discounting the opinions of these physicians and instead giving more weight to non-examining physicians. (*Id.* 20, 24) I am not persuaded by those legal arguments. (*But see* factual discussion at Section III.A.2 & 3, pp. 12–17, *infra.*)

In general, the opinion of a medical professional who has treated the claimant is entitled to deference. 20 CFR § 404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed,

7

longitudinal picture of your medical impairment(s)).″ But the opinion of a treating source must be given "controlling weight" only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* The Third Circuit has held that unless there is contradictory medical evidence in the record, an ALJ may not reject a treating physician's opinion. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). An ALJ's unsupported judgment, speculation, or lay opinion is not sufficient to outweigh a treating physician's opinion. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

If the treating physician's opinion is not accorded controlling weight, the ALJ must weigh it, like any other medical opinion, in light of the factors set forth in 20 CFR § 404.1527. *See* 20 CFR § 404.1527(c)(1-6)(ALJ must consider: (i) the examining relationship between the claimant and the doctor; (ii) the treatment relationship between the claimant and the doctor; (iii) the extent to which the opinion is supported by relevant evidence; (iv) the extent to which the opinion is consistent with the record as a whole; and (v) whether the doctor providing the opinion is a specialist). Although "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded more or less weight depending on the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

As an initial matter, the ALJ did not flatly reject the opinions of Drs. Chung and De Alwis. The ALJ credited their diagnoses in finding that Winters suffered from numerous severe impairments, including fibromyalgia, osteoarthritis, rheumatoid arthritis, bipolar disorder, major depressive disorder, and anxiety. (Tr. 41) The ALJ did find, however, that their assessment of Winters's *functional limitations* based on her impairments during the period of alleged disability was not supported by the record. (Tr. 45-46) "The law is clear ... that the opinion of a treating physician does not bind the ALJ on the

8

issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) (citation omitted). With the exception of the factual issue discussed *infra*, I find that the ALJ provided sufficient reasoning to support her weighing of the evidence regarding Winters's functional limitations.

With respect to Winters's limitations due to physical impairments, the ALJ found (1) inconsistencies and a lack of factual support within Dr. Chung's own records, and (2) inconsistencies between Dr. Chung's opinion and the rest of the record. *See* 20 CFR § 404.1527(c)(3-4)(instructing ALJ's to consider whether an opinion is supported by "relevant evidence" and "consistent with the record as a whole").[3] For example, the ALJ noted that on Dr. Chung's Impairment Questionnaire from September 2013, he listed "fibromyalgia" as the primary diagnosis at question 2.a but did not check the space for "trigger points" at question 4. (Tr. 45; 452-53) The ALJ also found that Dr. Chung's opinion of Winters's hand limitations would "interfere with the ability to do even the most basic activities of daily living" and had no support in the record. (Tr. 46) In addition, the ALJ found that Dr. Chung's records did not reflect a "severely limited range of motion" stemming from Winters's back and lower body pain. (Tr. 45) In general, the ALJ found that Dr. Chung's records offered "little by way of supportive treatment records" for his "limited opinions of the claimant's functioning." (Tr. 45)

The ALJ also found Dr. Chung's opinion on Winters's functional limitations to be inconsistent with the record as a whole—particularly evidence provided by other examining physicians. She highlighted Dr. Gross's July 19, 2010 treatment notes, which did not indicate any fibromyalgia trigger points and found negative results on straight leg raising tests. (Tr. 45; 367) The ALJ noted that Dr. Arbit's December 2010 examination notes attributed Winters's

---

[3] Winters argues that the ALJ did not properly weigh all of the factors in 20 CFR § 404.1527. The ALJ was entitled to find supportability and consistency to be the most persuasive factors. *See, e.g., Buckley v. Astrue*, No. 9-5058, 2010 WL 3035746, at *9-10 (D.N.J. Aug. 3, 2010). The ALJ also took note of other relevant factors. See Tr. 44-45 (stating that Dr. Chung began treatment in September 2011); Tr. 46 (noting that Dr. De Alwis was a psychiatrist who had treated Winters since December 2010).

9

symptoms primarily to her depression rather than to physical ailments. (Tr. 45; 385) The ALJ pointed out that Winters's annual physical at the Paterson Counseling Center was inconsistent with Dr. Chung's assessment of Winters's hand limitations. (Tr. 46; 424-27) The ALJ also noted the absence of any records of physical therapy or other like treatment for Winters's ailments. (Tr. 45)

With respect to Winters's mental impairments, the ALJ similarly relied on inconsistencies within Dr. De Alwis's opinion as well as inconsistencies between her opinion and the record as a whole. Primarily, the ALJ identified discrepancies between Dr. De Alwis's opinion on Winters's functional limitations and the Global Assessment Function ("GAF")[4] scores she assigned Winters. For example, in August 2013, Dr. De Alwis completed a form that indicated Winters was "markedly limited" in nearly all areas of mental functioning on the form. (Tr. 46; 398-400) However, she also listed her as having a current GAF of 55, with 50 being the lowest GAF over the previous year.[5] (*Id.*; Tr. 395) The ALJ found the GAF scores inconsistent with Dr. De Alwis's assessment of Winters's limitations. (Tr. 46) In addition, the ALJ noted that Dr. De Always had previously assigned Winters a GAF of 60 in December 2010, and that the records failed to reflect deterioration during that period of treatment. (Tr. 46; 410)

---

[4]   A GAF score is a 0-100 rating scale used by the American Psychiatric Association to evaluate the functional impairment of a patient. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) (DSM–IV); *Horst v. Comm'r of Soc. Sec.*, 2014 WL 56404, at *4 n.3 (3d Cir. Jan. 8, 2014).

[5]   GAF scores in the 51-60 range "indicate moderate impairment in social or occupational functioning." *Cherry v. Barnhart*, 29 Fed. App'x 898, 900 (3d Cir. 2002); *see also Gullin v. Comm'r of Social Sec.*, No. 13-1897, 2014 WL 1466488, at *4 n.3 (D.N.J. April 14, 2014). A GAF score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g ., no friends, unable to keep a job)." *Johnson v. Comm'r of Social Sec. Admin.*, No. 7-3137, 2008 WL 4372786, at *3 n.10 (D.N.J. Sept. 22, 2008).

The ALJ also considered records from other examining mental health professionals. The ALJ relied upon a letter from Dr. Corwin, who was Winters's longtime psychiatrist. Corwin noted that Winters was taking medications similar to what he had prescribed her with the exception of Ritalin, and that Winters had responded well to Ritalin in the past. (Tr. 46; 423) The ALJ also took note of the records from an August 2011 examination by Dr. Roy[6] during which Winters stated that "confusion" was her primary mental health complaint. (Tr. 46; 282) Dr. Roy assessed Winters at a GAF of 60. (Tr. 46; 284) The ALJ also highlighted a gap of treatment of nearly one year during Winters's period of alleged disability during which she was not under the treatment of a psychiatrist.[7] (Tr. 46)

Winters relies on the Third Circuit's decision in *Brownawell*, 554 F.3d 352, to argue that the ALJ improperly credited the opinions of the state consultants over the opinions of Drs. Chung and De Alwis. (Pl. Br. 17-20) However, as explained *supra*, the ALJ's decision did not rest solely, or even primarily, on the opinions of the non-examining physicians, and the ALJ gave adequate reasons for her weighing of the evidence. The ALJ's decision relied primarily on (1) the lack of support in the record for the opinions of Drs. Chung and De Alwis regarding Winters's functional limitations, and (2) records from a

---

[6]   Dr. Roy examined Winters once in connection with her application for Social Security DIB. (Pl. Br. 14)

[7]   The ALJ noted that there was a "time lag of over a year from [Winters's] onset date to her initial mental health treatment" which "casts doubt as to whether these symptoms truly impeded the claimant's ability to work." (Tr. 46). This is slightly inaccurate. Winters was treated by Dr. Corwin until January 2010 (3 months after her claimed onset date of October 31, 2009). (Tr. 423) There was, however, was a gap in treatment when Dr. Corwin closed his practice and before Winters began seeing Dr. De Alwis in December 2010. (Tr. 77; 444) The ALJ specifically mentioned in her opinion that Dr. Corwin treated Winters until January 2010 (Tr. 46), so I assume that she intended to point out the gap in treatment of approximately eleven months between Dr. Corwin's treatment and treatment by Dr. De Alwis. I would not remand based solely on this issue, but on remand, the ALJ may wish to clarify this matter.

11

number of other doctors who had the opportunity to examine Winters.[8] The ALJ mentioned none of the non-examining state physicians by name, and while she noted that she did "adopt many of [their opinions]," she similarly discounted some of their views that she determined were not supported by the record. *See, e.g.*, Tr. 46 ("Though it is noted that the State agency medical consultants assessed the claimant to limited walking and standing ... the record does not include supportive documentation ... As such, this portion of the opinion is provided little weight."). In addition, the ALJ's grant of some weight to the state consultants was appropriate. *See Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)("State agent opinions merit significant consideration.") (citing SSR 96-6p).

### 2. *Brownawall* error as to "trigger points"

However, in applying the standards of *Brownawell, supra*, I find that the ALJ inaccurately described the record relating to a factual issue on which her decision relied. Accordingly, I find that remand is appropriate for clarification on this aspect of the ALJ's decision.

The ALJ appears to have overlooked several references in the claimant's medical records to multiple bilateral trigger points. "Trigger points" (also referred to as "tender points" in the record) are used to diagnose and assess fibromyalgia. In general, the ALJ found that the record lacked "significant documentation of tender points over time or other criteria used for evaluation of [fibromyalgia] under Social Security Ruling 12-2p." (Tr. 45) The ALJ stated in her decision that "[w]hile there is evidence of multiple bilateral trigger points on *one occasion*, it is not found repeatedly through the record." (Tr. 45; 367)(emphasis added).

---

[8] For the same reason, Winters's argument (made in passing) that the state consultants' opinions were based on an incomplete record (Pl. Br. 21, 24), is unavailing.

The "one occasion" to which the ALJ apparently refers is Dr. Rosner's March 2011 examination that found twelve bilateral trigger points. (Tr. 45; 367) There are at least three other findings of trigger points in the record, however.

The ALJ's decision does not mention—and the ALJ may have overlooked—Dr. Chung's records from June 2012, which reflect a finding of "18 of 18 fibromyalgia tender points." (Tr. 412) That omission is highlighted by the ALJ's noting (accurately) that another of Dr. Chung's records failed to document trigger points at all. *See* Tr. 45; 452-53 ("Dr. Chung's most recent medical source statement at Exhibit 14F indicated fibromyalgia as the primary diagnosis at question 2(a) of the form and, inconsistently, provided no listing of trigger points at question 4....").

In addition, the ALJ's decision does not address records from September 30, 2011 and November 15, 2011. These reflect multiple bilateral tender points—five and eight, respectively. (Tr. 308; 305)[9]

As discussed *supra*, the ALJ accurately and very ably highlighted a number of deficiencies in the medical records. Those deficiencies, she permissibly found, undermined Dr. Chung's opinion regarding Winters's functional limitations due to fibromyalgia (and other impairments). For example, in certain places, the record seems to reflect an absence of fibromyalgia trigger points where one would expect to see them. *See, e.g.*, Tr. 367 (Dr. Gross's exam finding Winters's musculoskeletal system "normal" and no tenderness in the spine). On remand, the ALJ might or might not reach the same ultimate conclusion. But her decision should leave no uncertainty that

---

[9] Pursuant to SSR 12-2p, one of the criteria ALJs use to assess whether a claimant has a medically determinable impairment (MDI) of fibromyalgia, is the presence of "[a]t least 11 positive tender points on physical examination." *See* SSR 12-2p. Having already found that Winters has an MDI of fibromyalgia based on her physicians' diagnoses (Tr. 41), the ALJ appears to use the criteria in SSR 12-2p to assess the severity of the claimant's fibromyalgia. Reliance on SSR 12-2p may explain why the ALJ failed to note the September and November 2011 records, which counted fewer than eleven trigger points. On remand, the ALJ should clarify what weight, if any, she assigns to these records.

she has considered all of the evidence in the record. I therefore remand the case for clarification on this issue.

### 3. ALJ's assessment of Winters's credibility

Winters argues that the ALJ failed to properly assess her credibility in violation of 20 CFR § 404.1527 and SSR 96-7p. (Pl. Br. 25-27) Again, I do not find any errors in the ALJ's approach or reasoning. However, because the ALJ's assessment of Winters's credibility was necessarily intertwined with her treatment of the factual record, on remand, the ALJ should similarly clarify her assessment of Winters's credibility in light of the factual issue discussed in the immediately preceding Section III.A.2, *supra*.

The ALJ had the opportunity to observe Winters at the hearing, and was well-positioned to assess her credibility. *See Coleman v. Comm'r of Social Sec.*, 494 Fed. App'x 252, 254 (3d Cir. 2012)("We 'ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'") (quoting *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)). 20 CFR § 404.1529(b) makes clear that the claimant's statements about symptoms are not enough to establish disability. Allegations of subjective symptoms must be supported by objective medical evidence. SSR 96–7p.

Of course, an ALJ's impression of the claimant does not stand alone. Under SSR 96–7p, a credibility determination must be based on "the entire case record." The regulation sets forth a two-step process for evaluating a claimant's statements about her own impairments. *Id.* First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) ... that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

At this second step, if the ALJ finds that the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, she must also consider such factors as:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p (citing 20 CFR § 404.1529(c)).[10]

The ALJ's credibility determination "must contain specific reasons for the finding of credibility, supported by the evidence in the case record." SSR 96–7p; *see also* 20 CFR §§ 404.1529(b). The ALJ must indicate which evidence she relies on and which she rejects. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

The ALJ explicitly cited the two-step process she applied under SSR 96–7p. (Tr. 43) Under this rubric, she found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." However she found the claimant's statements about the "intensity, persistence and limiting effects of these symptoms ... not entirely credible." (Tr. 44) While the ALJ credited Winters as suffering from multiple impairments, in her assessment, a lack of documentation "undermine[d] [Winters's] allegations of functional limitations" caused by her impairments.

---

[10] Winters argues that the ALJ "did not give appropriate consideration to the subjects she is required to explore under SSR 96-7p." (Pl. Br. 27) I disagree. The ALJ's decision focused primarily on the second factor, but she also took note of Winters's daily activities (Tr. 44, 46), medication (*Id.*), and the fact that the record contained no evidence of alternative treatment such as physical therapy (Tr. 45).

15

(Tr. at 45) On the whole, the ALJ found the medical records to be inconsistent with Winters's testimony. *See* SSR 96-7p ("One strong indicia of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."); *Bailey v. Comm'r of Soc. Sec.*, 354 Fed. App'x 613, 618 (3d Cir. 2009)(ALJ properly discounted claimant's testimony where there were inconsistencies between the testimony and the medical evidence in the record).

Specifically, the ALJ found that conclusions in the medical records that tended to support Winters's testimony were undermined by (1) a lack of support, and (2) internal inconsistencies within the records themselves. *See* Section III.A.1, *supra*. In supporting her decision, the ALJ sifted through Winters's medical records and her own testimony.

With respect to Winters's physical limitations, the ALJ found that the records were internally inconsistent and that they lacked specific factual support for conclusions that would corroborate Winters's testimony regarding her level of pain and related limitations. *See* Section III.A.1, *supra*; Tr. 44-47. The ALJ similarly found the mental health record evidence inconsistent with Winters's testimony about her functional limitations based on her mental impairments. *Id.*

The ALJ also identified an inconsistency in Winters's own testimony regarding the reason she stopped working in 2009. Winters said she left her work because she had a "breakdown" but then also said that she was "laid off" from that job. (Tr. 44)[11] SSR 96-7p instructs the ALJ to consider inconsistencies within the claimant's testimony when assessing credibility. *See* SSR 96-7p; *Craig v. Comm'r of Soc. Sec.*, No. 13-4454, 2014 WL 6667216, at

---

[11] To be sure, Winters's testimony was not entirely clear on the reason or reasons her employment ended. *See* Tr. 55-56; 60-61. The ALJ was entitled to consider such inconsistencies, however, as bearing on credibility.

*14 (D.N.J. Nov. 21, 2014)(inconsistencies in claimant's testimony, including about reason for leaving previous job, contributed to a lack of credibility).

For the most part, I find the ALJ's credibility assessment sufficient. I find no errors of law or procedure in her analysis. But credibility cannot be fully assessed except in the context of the full record, and I have remanded because the full record may not have been considered. On remand, the ALJ should address Winters's credibility in light of the factual issue discussed in Section III.A.2, *supra*. Again, I do not suggest that the outcome must be different—only that the ALJ's decision should make clear that she has considered the entire record in this respect as well.

### B.  ALJ's step five determination

Winters asserts that the ALJ's determination that there is alternative work in the economy that she can perform was based on a flawed hypothetical that did not capture all of her limitations. Therefore, Winters argues that the Commissioner did not meet her burden at step five. (Pl. Br. 27-30) I do not agree and instead find that the ALJ's step five determination was supported by substantial evidence.

The hypothetical the ALJ posed to the vocational expert was as follows:

> Claimant could do light work, that is, she could occasionally lift 20 pounds, frequently 10 pounds. Pushing and pulling limited to the same weight restrictions. That she should not—that she cannot climb ladders, ropes, scaffolds. That she can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, crawl. That she should avoid hazards such as dangerous machinery and heights. Avoid—no temperature extremes. That she can frequently hand bilaterally. That she can—that she's limited to simple, routine work with no more than—with no public contact and occasional co-worker and supervisory contact.

(Tr. at 81) Based on this hypothetical, the vocational expert stated that Winters could not perform her past work but could perform other work in the regional economy. (Tr. at 82) The vocational expert provided examples of jobs Winters could perform—ticketer, inspector and hand packager, and decal applier. (*Id.*)

In Winters's view, the hypothetical does not accurately capture all of her limitations that are established by the record. *See Rutherford v. Barnhard*, 399 F.3d 546, 553 (3d Cir. 2005)("[T]he ALJ must accurately convey to the [vocational expert] all of the claimant's credibly established limitations."). Specifically, Winters notes that the ALJ's decision found that "[w]ith regard to concentration, persistence or pace, [Winters] has moderate difficulties." (Tr. at 42) Winters argues that these limitations should have been conveyed to the vocational expert as part of the hypothetical.

Winters rests her argument primarily on the Third Circuit's decision in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004). In *Ramirez*, the Court held that a hypothetical that limited the claimant to (among other restrictions) "simple one or two-step tasks" was not sufficient to account for the ALJ's observation that the claimant "*often* suffered from deficiencies in concentration, persistence, or pace." 372 F.3d 546 at 554 (emphasis in original). The Court explained that the limitation to simple one or two-step tasks was not sufficient to account for the claimant's mental limitations, particularly for deficiencies in pace, which could restrict the claimant from jobs with production quotas. *Id.* Had the ALJ conveyed this limitation, the Court reasoned, the vocational expert's answer about available work may have been different. *Id.*

*Ramirez* is highly distinguishable. First, in *Ramirez*, it was significant to the Court that the claimant "often" experienced the relevant limitations. *Id.* at 555. This was explicitly acknowledged by the ALJ in that case and was obvious to the Court from the record. *Id.* The Court explained:

> Of course, there may be a valid explanation for [omitting a specific limitation regarding pace] from the ALJ's hypothetical. For example, the ALJ may have concluded that the deficiency in pace was so minimal or negligible that, even though Ramirez "often" suffered from this deficiency, it would not limit her ability to perform simple tasks under a production quota. The record, however, would seem to suggest otherwise.

*Id.*

In contrast, here the ALJ found that Winters has only "moderate" or "some" limitations in concentration, persistence, or pace, and the record does not readily suggest otherwise. (Tr. at 42) In short, the hypothetical reflected those factual findings. Second, Winters's case included additional limitations to minimize distractions, limitations that were not present in *Ramirez*. Specifically, the ALJ found that Winters was suited only for positions with no public contact and only occasional contact with co-workers and supervisors. (Tr. at 81) *Ramirez*, by contrast, found that the applicant's mental impairments required only limitations on travel and phone privileges. 372 F.3d 546 at 554. Third, the ALJ limited Winters to "simple, routine work," a broader range than *Ramirez*'s "simple one or two-step tasks." (Tr. at 42)

Following *Ramirez*, courts including the Third Circuit have found hypotheticals like the one used in this case appropriate under similar circumstances. *See McDonald v. Astrue*, 293 Fed. App'x 941, 946 & n.10 (3d Cir. 2008)(hypothetical that included limitation to "simple, routine tasks" was sufficient to account for moderate restrictions in concentration, persistence, and pace because unlike in *Ramirez*, the claimant did not "often" suffer from these deficiencies); *Menkes v. Astrue*, 262 Fed. App'x 410, 412 (3d Cir. 2008)(ALJ's hypothetical limiting claimant to "simple routine tasks" accounted for moderate limitations in concentration, persistence, and pace); *Seabon v. Comm'r of Social Sec.*, No. 10-2268, 2011 WL 3425508, at *9 (D.N.J. Aug. 4, 2011)(distinguishing *Ramirez* and finding hypothetical based on "simple, unskilled jobs involving one or two steps" with low stress, limited proximity to others, and available breaks, sufficient to account for moderate limitations in concentration, persistence, and pace); *Palisay v. Comm'r of Social Sec.*, No. 11-4857, 2012 WL 3201428, at *17 (D.N.J. Aug. 2, 2012)(hypothetical restricting claimant to "settings with low stress and little to no public contact encompass[ed] Plaintiff's moderate limitations in social functioning and concentration, persistence, and pace"); *Whitford v. Comm'r of Social Sec.*, No. 13-5469, 2014 WL 3514990, at *4, 8 (D.N.J. July 15, 2014)(hypothetical based

on jobs that are "unskilled, simple" and "low stress" accounted for "moderate limitations in the activities of daily living, social interactions, and concentration, persistence, and pace").

Accordingly, I am satisfied that the hypothetical in this case corresponded to the evidence, and that it was relevant and sufficient. It follows that the ALJ's step five determination was supported by substantial evidence.

### IV.     CONCLUSION

For the foregoing reasons, the ALJ's decision is **REMANDED** for further proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

Dated: December 9, 2015

_____
**KEVIN MCNULTY**
**United States District Judge**